UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jodi Cashman, individually and on behalf of all others similarly situated, | 1:21-cv-04033 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ferrara Candy Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Ferrara Candy Company ("defendant") manufactures, labels, markets, and sells cookies purporting to be covered in fudge and flavored by mint ("Fudge Stripes – Fudge Mint") under the Keebler brand ("Product").



2. The front label representations include fudge being dripped on the Product, mint leaves, "Fully Fudged – Fudge Mint," "Naturally and Artificially Flavored," "Made With Real Keebler Fudge," and the iconic, trusted brand ambassador for over half a century, Ernie the Elf.

3. The representations that the Product is "Made With Real Keebler Fudge" and contains actual mint ingredients is false, deceptive, and misleading because it does not contain these ingredients.

**I.  CONSUMER DEMAND FOR SIMPLER INGREDIENTS**

4. The past decade has seen consumers demand "cleaner, simpler ingredients," of "better quality," including in indulgences like cookies.[1]

5. According to Nielsen market research, most consumers "say that when it comes to ingredient trends, a back-to-basics mind-set, focused on simple ingredients and fewer artificial or processed foods, is a priority."[2]

6. Ninety-four percent (94%) of consumers say that they want manufacturers to be transparent about the actual ingredients in food and how it is made.

7. According to one executive, "As consumers' perceptions shift to a less-is-more mentality, they're seeking products made with whole, real ingredients that are visible."[3]

8. The 2019 Power of Bakery report, published by the American Bakers Association's report, found that fifty percent of consumers look for "real" ingredients when buying indulgent bakery products.

9. Companies recognize that being able to promote foods as "made with real," indulgent ingredients, is an important selling point, because it can be "a nice bit of permission for people to enjoy a treat."

10. The Keebler brand was recently purchased by Defendant, who revamped the Keebler line up with "updated recipes that promise a bigger focus on 'real' ingredients like 'real Keebler fudge,' 'real Madagascar vanilla' and 'even more real chocolate chips.'"[4]

---

[1] Lisa White, State of the Industry: Cookies shift into overdrive, June 14, 2013.
[2] Nielsen, Reaching for Real Ingredients: Avoiding the Artificial, CPG, FMCG & Retail, Sept. 6, 2016.
[3] Karlee Renkoski, Modifying mainstays for the evolving consumer 04.02.2018
[4] Graham Vyse, Keebler brings the brand into the real world in far-reaching refresh, Aug. 17, 2020; Inside Ferraras Transformation of Keebler Cookies, June 22, 2021.



11. A top Keebler executive noted that the company is "enhancing our ingredients with more 'made with real:'"

> We know for the US consumer, it's really table stakes, shorter ingredient statements, more real ingredients. With Chips Deluxe Original, you'll see 'made with more real chocolate.' On Fudge Stripes you'll see 'made with real Keebler fudge,' and on our Sandies brand you'll see real Madagascar vanilla has been added to our ingredients statement.

12. Defendant knows that "The cookie category is impulsive; half of the purchases are not planned, so for it to be a purchase driver it had to stand out on shelf."

13. The highlighted ingredients on the Product include "Real Keebler Fudge" and mint, through the mint leaves.

14. Defendant described its "fudge-centric" marketing campaign as focused on "the craftsmanship and quality" of the cookies.[5]

## II. DEFINITIONS OF FUDGE

15. Fudge "is a type of sugar candy that is made by mixing sugar, butter and milk."[6]

16. Though fudge can have almost any flavor, milkfat – typically in the form of butter –

---

[5] Monica Watrous, Keebler cookies revamped under new ownership, Baking Business, July 30, 2020.
[6] Wikipedia contributors. "Fudge." *Wikipedia, The Free Encyclopedia*. Wikipedia, The Free Encyclopedia, 5 Jan. 2021. Web. 8 Jan. 2021.

3

is the central component.

17. An 1893 recipe for fudge called for "Four cups granulated sugar; one cup cream; one cup water; one-half cake chocolate; one-half Cup butter."[7]

18. In 1896, The Los Angeles Times published the original fudge recipe by the Vassar students credited with first making fudge: "Two cups of sugar, one cup of milk, a piece of butter one-half the size of an egg" and added flavoring.[8]

19. A 1902 fudge recipe from Mrs. Rorer's New Cook Book includes:[9]

> 4 ounces of chocolate
> 2 cups of sugar
> 1 teaspoonful of vanilla
> 1/2 cup of milk
> 1 rounding tablespoonful of butter

20. The role and expectation of milk fat in fudge is not an antiquated or anachronistic concept, which disappeared with the advent of industrial food production.

21. Molly Mills, one of the leading authorities on fudge, recently described it as made "most commonly from butter, milk, sugar, and chocolate."[10]

22. The Oxford Companion to Sugar and Sweets notes that:

Traditionally, fudge is made by gently boiling granulated sugar and milk to the soft-ball stage (234° to 240°F/ 112° to 115°C); adding butter; cooling the mixture somewhat (120°F/49°C); then beating until thick, creamy, and less glossy.[11]

23. In the encyclopedic work, An A-Z of Food and Drink, the author describes fudge as "a sort of soft, somewhat toffee-like sweet made by boiling together sugar, butter, and milk."[12]

24. Dictionaries confirm the definitions held by confectionery experts.

---

[7] Mrs. J. Montgomery Smith, of Wisconsin, Alternate Lady Manager.
[8] Los Angeles Times, "'Fudges' Are Vassar Chocolates," May 11, 1896, p.2.
[9] Sarah Tyson Rorer [Arnold and Company: Philadelphia] 1902, p. 629.
[10] Molly Mills, Come Get Your Fudge: 40 Tasty and Creative Fudge Recipes for Everyone, Amazon Digital Services LLC, June 11, 2019.
[11] Goldstein, Darra, and Sidney Mintz. The Oxford companion to sugar and sweets. Oxford University Press, 2015.
[12] John Ayto, An A-Z of Food and Drink, Oxford University Press, 2002, p. 133.

25. Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines fudge as "a soft candy made from sugar, butter, and milk or cream."[13]

26. The Cambridge Dictionary defines fudge as "a soft sweet made from sugar, butter, and milk."[14]

27. Collins Dictionary defines fudge as "a soft brown candy that is made from butter, cream, and sugar."[15]

28. Dictionary.com defines fudge as "a soft candy made of sugar, butter, milk, chocolate, and sometimes nuts."[16]

29. Macmillan Dictionary defines fudge as a "soft brown sweet food made from sugar, butter, and milk or cream."[17]

30. A leading treatise on confectionary science and technology offers a model commercial formulation for fudge which includes between eight and sixteen percent butter and between twelve and twenty percent sweetened condensed milk.

**10.2 Formulations and Ingredients** 275

**Table 10.1** Typical batch formulations (in %) for caramel, fudge and toffee

| | Commercial caramel (ungrained) | Caramelized sugar caramel | Fudge | English toffee (American) |
|---|---|---|---|---|
| Water | 15–25 | 0 | 10–15 | 8–10 |
| Sucrose | 10–20 | 55–65 | 30–50 | 45–55 |
| Glucose syrup (42 DE) | 36–46 | 0–5 | 10–20 | 0 |
| Sweetened condensed milk[a] | 20–40 | 0 | 12–20 | 0 |
| Cream | 0 | 25–35 | 0 | 0 |
| Butter[b] (fat) | 5–15 | 6–12 | 8–16 | 40–50 |
| Fondant | 0 | 0 | 3–5 | 0 |
| Chocolate liquor/cocoa powder | 0 | 0 | 0–10 | 0 |
| Salt | 0.2–0.5 | 0.2–0.5 | 0.2–0.5 | 0.3–0.6 |
| Vanilla | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 |
| Lecithin | 0–0.4 | 0–0.4 | 0–0.4 | 0.25–0.45 |
| Nuts (unroasted) | 0 | 0 | 0–12 | 6–12 |

[a]Other dairy ingredients might include evaporated milk or dried milk powder
[b]Salted butter needed for toffee

---

[13] Fudge definition – Google search.
[14] Cambridge Dictionary, fudge.
[15] Collins Dictionary, fudge.
[16] Dictionary.com, fudge.
[17] Macmillan Dictionary, fudge.

### III. FAT INGREDIENTS ARE ESSENTIAL TO FUDGE

31. The quality of fudge depends on the amount and type of fat-contributing ingredients.[18]

32. The small droplets of fat are dispersed throughout the candy mass, providing lubricity and impart desirable flavor release.

33. If the fat content is too high, it can lead to oil separation and a greasy texture.[19]

34. The fat ingredients are typically from dairy or vegetable oils.

35. The dairy ingredients are based on milk fat, mainly added through butter, which is 80% milkfat.

36. Other dairy ingredients like milk and milk derivatives may be added as well.

37. Vegetable oil ingredients like palm kernel and palm oil, are solid at room temperature, and referred to as "hard [vegetable] fats."

#### A. Effect of Different Fat Ingredients

38. Milk fat melts at about mouth temperature (35 °C/95 °F) and has a moderate solid fat content at room temperature.

39. The melt temperature ensures that milkfat melts in the mouth and does not contribute to a waxy sensation.

40. Dairy ingredients impart a creamy, rich taste to fudge, because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

41. Alternatives to milk fat – such as vegetable oils – do not melt at mouth temperature and leave a waxy mouthfeel.

---

[18] International Dairy Federation, Bulletin, 1982.
[19] Hartel R.W., von Elbe J.H., Hofberger R. (2018) Caramel, Fudge and Toffee. In: Confectionery Science and Technology. Springer, Cham. https://doi.org/10.1007/978-3-319-61742-8_10

6

42. Vegetable fats do not contribute to the flavor of fudge, because they are theoretically "refined, bleached and deodorized."

43. However, these ingredients are subject to reversion where they contribute off-odors to foods.

44. One popular recipe website echoes the importance of dairy ingredients to fudge, advising, "When making fudge, be sure to use good quality butter and do not substitute margarine (vegetable oils)," since they contain more water and can prevent the fudge from setting up properly.[20]

45. Another site cautions, "Look for recipes that call for butter instead of margarine (vegetable oils)."[21]

46. One chef recommends to "Never use margarine (vegetable oils) instead of butter [in fudge], because your fudge won't taste as good and will have a shorter shelf life."

## IV. THE "REAL KEEBLER FUDGE" LACKS DAIRY INGREDIENTS CONSUMERS EXPECT FROM FUDGE

47. When consumers observe the representation "Made With Real Keebler Fudge," they will expect it contains ingredients which are essential to fudge.

48. However, the Product lacks the ingredients essential to fudge – butter and milk – and substitutes vegetable oils and whey, lower quality, and cheaper ingredients.

**Ingredients: Enriched flour** (wheat flour, niacin, reduced iron, vitamin $B_1$ [thiamin mononitrate], vitamin $B_2$ [riboflavin], folic acid), **sugar, vegetable oil** (palm kernel, soybean and palm oil), **high fructose corn syrup, cocoa** processed with alkali, **whey.** Contains 2% or less of leavening (baking soda, sodium acid pyrophosphate, monocalcium phosphate), salt, sorbitan tristearate, soy lecithin, molasses, natural and artificial flavors.

**Ingredients:** Enriched flour (wheat flour, niacin, reduced iron, vitamin b1 [thiamin

---

[20] Use Real Butter For Making Best Fudge, RecipeTips.com.
[21] Easy Fudge Making Tips, The Happy Housewife.

7

mononitrate], vitamin b2 [riboflavin], folic acid), **sugar, <mark>vegetable oil</mark> <mark>(palm kernel, soybean and palm oil),</mark> high fructose corn syrup, cocoa processed with alkali, <mark>whey</mark>. Contains 2% or less of** leavening (baking soda, sodium acid pyrophosphate, monocalcium phosphate), salt, sorbitan tristearate, soy lecithin, molasses, natural and artificial flavors.

49. Since the ingredients for the food are listed together, i.e., the cookies, fudge and mint are not identified separately, it is necessary to identify the ingredients which correspond to each component.

50. The Product lacks butter and milk, essential ingredients to fudge.

51. The fudge ingredients are easily identifiable as including vegetable oil and whey.

52. The vegetable oils used include "palm kernel, soybean and palm oil."

53. These vegetable fats are often used in fudge, "sometimes in combination with milk fat to reduce costs."

54. However, Defendant's fudge does not use vegetable fats in combination with milk, but with whey.

55. Whey is the watery part of milk that is separated from the coagulable part or curd, and a by-product of cheese manufacturing.

56. Whey is mainly protein, lacks the milkfat of real milk, and is cheaper than milk.

57. Milk provides fudge with its creamy texture.

V. **SUBSTITUTION OF MILK FAT INGREDIENTS NOT EXPECTED IN PRODUCT REPRESENTED AS FUDGE**

58. Reasonable consumers are misled by the "Made With Real Keebler Fudge" claim because they expect this means a non-*de-minimis* amount of dairy ingredients instead of substitute, lower quality replacements like vegetable fats and whey.

59. The result is that the Product's "fudge" provides less satiety, a waxy and oily mouthfeel, and leaves an aftertaste.

60. Consumption of dairy ingredients, like butter and milk, does not have the negative effects on cholesterol of vegetable oils.

61. Consumption of vegetable oils is linked to health problems, like increased chances of heart disease.

62. Milk fat ingredients also contain the fat-soluble vitamins A, D, E, and K, which are absent from hardened vegetable fats.

63. Dairy ingredients impart a creamy, rich taste to fudge, as butter and milk contain hundreds of lactones, which are well-known aroma compounds which contribute to taste.

64. Vegetable oils are not considered "real" ingredients by consumers since they are based on the conversion of soybean and palm fruit to solid and liquid mass through hydrogenation and interesterification.

65. Butter and milk are the epitome of "real" ingredients since they are unprocessed and maintain their original form from the time they are produced until the time they are incorporated into other foods.

## VI. PRODUCT LACKS MINT INGREDIENTS

66. Though the front label contains pictures of mint leaves, the ingredient list reveals the absence of any mint ingredients.

67. The only way the Product can purport to taste like mint is due to the "Natural and Artificial Flavors" in the fine print of the ingredient list.

68. This means that any actual mint is at most a negligible part of this ingredient.

69. Though the front label states, "Naturally and Artificially Flavored," reasonable consumers will still expect an appreciable amount of mint ingredients from the mint plant.

70. Artificial flavoring cannot duplicate the unique flavor compounds of real mint.

Case: 1:21-cv-04033 Document #: 1 Filed: 07/29/21 Page 10 of 16 PageID #:10

71. Consumers value the vitamins and minerals of real mint, absent from artificial mint flavor.

## VII. CONCLUSION

72. Since Keebler is a brand associated with high-quality ingredients, no reasonable consumer would expect that "Real *Keebler* Fudge" is a sign that the fudge lacks essential fudge ingredients.

73. "Real Keebler Fudge" is an assurance to consumers that the fudge used will be of the utmost quality, *viz*, and especially, it will contain ingredients which are essential to fudge.

74. The emphasis on "Real Keebler Fudge" also assures consumers the Product will contain actual mint ingredients instead of artificial mint flavor.

75. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

76. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

77. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

78. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

79. The Product is sold for a price premium compared to other similar products, $3.99 for an 11.5 OZ bag, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

80. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

81. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

82. Plaintiff Jodi Cashman is a citizen of Colorado.

83. Defendant Ferrara Candy Company is an Illinois corporation with a principal place of business in Chicago, Cook County, Illinois.

84. The parties are citizens of different states.

85. Venue is in this district because defendant's principal place of business is in this district.

Parties

86. Plaintiff Jodi Cashman is a citizen of Peoria, Adams County, Colorado.

87. Defendant Ferrara Candy Company, is a Illinois corporation with a principal place of business in Chicago, Illinois, Cook County.

88. Defendant is one of the world's largest manufacturers of candies and baked goods.

89. Defendant acquired the iconic Keebler brand from Kellogg Company in or around 2019 for over one billion dollars.

90. The Keebler Fudge Mint Cookies are sold in tens of thousands of locations in Colorado and Illinois.

91. These locations include grocery stores, convenience stores, big box stores, warehouse stores, and are available online.

92. Defendant offers customers the option to buy the Product directly from them.

93. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from stores including at King Soopers, 655 Peoria Street Aurora CO 80011, in July 2021, among other times.

94. Plaintiff bought the Product at or exceeding the above-referenced price.

95. Plaintiff relied on the representations identified here.

96. Plaintiff realizes snacks like the Product, are an indulgence.

97. However, Plaintiff relied on the label which promised "real Keebler fudge" with depictions of mint leaves.

98. Plaintiff did not expect that a product labeled as containing real fudge and mint would substitute essential ingredients like butter, milk and mint oil with vegetable oils, whey and artificial mint flavor.

99. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

100. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

101. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

102. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

103. The class will consist of Colorado and Illinois residents who purchased the Product during the statutes of limitations for each cause of action alleged.

104. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

105. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

106. Plaintiff is an adequate representative because her interests do not conflict with other members.

107. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

108. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

109. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

110. Plaintiff seeks class-wide injunctive relief because the practices continue.

Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat.
§ 6-1-101 et seq., and Illinois Consumer Fraud and Deceptive
Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statutes)

111. Plaintiff incorporates by reference all preceding paragraphs.

112. Plaintiff asserts the Colorado consumer protection statute on behalf of herself and the Illinois consumer protection statute on behalf of the Illinois class.

113. Plaintiff and class members desired to purchase a product which contained fudge, understood as being comprised of a non-de minimis amount of milk fat ingredients, instead of mostly vegetable oils, and mint.

114. Defendant's false and deceptive representations and omissions are material in that

they are likely to influence consumer purchasing decisions.

115. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

116. Plaintiff relied on the representations.

117. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

118. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained fudge, understood as being comprised of a non-de minimis amount of milk fat ingredients, instead of mostly vegetable oils, and mint.

119. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

120. This duty is based on Defendant's outsized role in the market for this type of Product – the leading seller of coated pretzels.

121. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

122. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

123. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

124. Plaintiff and class members would not have purchased the Product or paid as much

14

if the true facts had been known, suffering damages.

## Negligent Misrepresentation

125. Defendant had a duty to truthfully represent the Product, which it breached.

126. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians of the Keebler brand.

127. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, an iconic brand.

128. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

129. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

130. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they contained fudge, understood as being comprised of a non-de minimis amount of milk fat ingredients, instead of mostly vegetable oils, and mint.

131. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

132. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 29, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com